UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Darren Brady,

      Plaintiff,

      v.                                           Civil Action No. 5:12-CV-41

Chittenden Correctional Facility,

      Defendant.

## **REPORT AND RECOMMENDATION**
(Doc. 7)

      Plaintiff Darren Brady brings this action *pro se*, pursuant to 42 U.S.C. § 1983, against Defendant Chittenden Correctional Facility, claiming both a violation of his constitutional rights and his rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq. (Doc. 5.) Factually, Brady alleges that his initial arrest was unlawful and that he was assaulted by an inmate during the subsequent unlawful imprisonment. (*Id*. at 4-5.) Pending before the court is Defendant's motion to dismiss, which raises four distinct bases for dismissal: (1) that Brady's claims are barred by the sovereign immunity enumerated in the Eleventh Amendment to the United States Constitution; (2) that Brady has failed to exhaust his administrative remedies as called for by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a); (3) that Brady's claims are barred because he cannot challenge the validity of his incarceration in an action brought under 42 U.S.C. § 1983, *see Heck v. Humphrey*, 512 U.S. 477 (1994);

and (4) that Brady has failed to state a claim under the Eighth Amendment because he cannot show "deliberate indifference" on the part of any prison officials. (Doc. 7.) Brady has filed a response to the instant motion. (Doc. 8.)

For the reasons that follow, I recommend that Defendant's motion to dismiss be GRANTED and the case be DISMISSED with leave to amend.

## Factual and Procedural Background

For purposes of the motion to dismiss, all facts alleged in the Complaint will be accepted as true.

At all times relevant to these proceedings, Plaintiff Darren Brady was an inmate committed to the custody and control of the Vermont Department of Corrections ("DOC").[1] On March 2, 2012, Brady filed the instant lawsuit, under both 42 U.S.C. § 1983 and the ADA, against the "Chittenden Correctional Facility."[2] (Doc. 5.) In his Complaint, Brady appears to raise two distinct factual allegations. First, he challenges the lawfulness of his arrest and subsequent detention, claiming that during his initial arrest in July 2011 the police and the probation department "forced their way into my home, with no search warrant [and] no arrest warrant." (*Id*. at 4.) Officials at the prison then accepted Brady into the facility, without legal justification to do so, when he "shouldn't have been in the prison." (*Id*.) Second, Brady alleges that, following this

---

[1] Since the filing of this lawsuit, it appears that Brady has been transferred from the facility. (Doc. 9.)

[2] On the face of his Complaint, Brady erroneously refers to the facility as the "Chittenden Correctional Facility" rather than the "Chittenden Regional Correctional Facility." His allegations make clear that he intends to file suit against the latter, particularly since the "Chittenden Correctional Facility" does not exist. (Doc. 7 at 3.) Given the liberal reading due *pro se* complaints, such omissions and misspellings are of little significance. Throughout, for the sake of consistency, I refer to Defendant as it is referred to in the Complaint (i.e., Chittenden Correctional Facility).

unlawful arrest, he was taken to the Chittenden Correctional Facility where he "was assaulted by an inmate." (*Id.*)

As for damages, Brady seeks a letter of apology, that the facility superintendent work without pay for "3 to 6 months," and a range of monetary awards. Specifically, Brady seeks $50,000 (ten percent to go to him personally and "the rest to schools, food shel[ves], [and] shelters"), $30,000 (fifteen percent to go to him personally, and the rest to the same organizations), and $20,000 (fifteen percent to him personally and the rest to the same organizations). (*Id.* at 5.)

Defendant filed the instant motion to dismiss on April 20, 2012 (Doc. 7), to which Brady filed a response (Doc. 8).

## Discussion

### I. Motion to Dismiss Standard[3]

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (pleading must

---

[3] Although Defendant, in passing, twice mentions that dismissal is appropriate for lack of this court's subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), the bulk of its motion argues for dismissal for Brady's failure to state a valid claim, Fed. R. Civ. P. 12(b)(6). This court recognizes that issues of sovereign immunity "affect[] ... subject matter jurisdiction," *Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993), but the Supreme Court has declared that whether Eleventh Amendment immunity is an issue of subject matter jurisdiction is a question that "we have not decided," *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998). Despite its own prior intimations to the contrary, the Second Circuit has also pointed out certain distinctions between sovereign immunity and subject matter jurisdiction that "support[] analogizing a sovereign immunity claim to an affirmative defense." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 238 (2d Cir. 2006). Given the ample reasons for dismissal for failure to state a claim, and Defendant's own emphasis on these arguments, the court need not wade any further into the question of subject matter jurisdiction.

3

contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. The court must accept factual assertions in a plaintiff's pleadings as true, but this presumption of truth "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

The court has the added obligation in this case to "construe a *pro se* complaint liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), by "reading such submissions 'to raise the strongest arguments they suggest,'" *Berlin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). This admonition applies with particular force when a plaintiff's civil rights are at issue. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). *Pro se* litigants, however, "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV. 9353, 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see Bowman v. Waterside Plaza, L.L.C.*, No. 07 Civ. 239, 2010 WL 2873051, at *4 (S.D.N.Y. July 21, 2010) ("the 'plausibility' standard articulated in *Twombly* and *Iqbal* applies to the pleadings of *pro se* plaintiffs").

4

## II. Americans with Disabilities Act Claim

At the outset, this court dispenses with Brady's ADA claim. Title II of the ADA—which applies to state prisoners, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998)— proscribes discrimination against individuals with disabilities in accessing public services. Specifically, that section provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Quite simply, the Complaint is devoid of any allegation that Brady is disabled, let alone any allegation that he was denied services by virtue of a disability. In the absence of any allegations whatsoever that are relevant to a claim under the ADA, Brady's ADA claim should be DISMISSED.[4]

## III. Section 1983 Claim Against Chittenden Correctional Facility

Similarly, this court can dispense with Brady's § 1983 claim. In an action brought under 42 U.S.C. § 1983, a plaintiff must establish that a "person" acting under color of state law deprived him of a federal constitutional right. 42 U.S.C. § 1983. In his Complaint, Brady has essentially filed suit against a building, naming the "Chittenden Correctional Facility" as the sole defendant. *See supra* n.2. A prison facility itself, such

---

[4] Defendant did not move to dismiss, or even in any way address, Brady's ADA claim. Despite this failure, and the Second Circuit's general reluctance towards *sua sponte* dismissal, *see Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988), dismissal is appropriate in this case in light of the clear inadequacy of the allegations to raise any ADA claim and the fact that Brady is given leave to amend his Complaint. *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2012) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").

as Defendant, is not a "person" within the meaning of § 1983 and is therefore not amenable to suit under that section. *See, e.g.*, *Whitley v. Westchester County*, No. 97 CIV. 0420, 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); *Marsden v. Federal Bureau of Prisons*, 856 F. Supp. 832, 836 (S.D.N.Y. 1994); *see also Fisher v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973); *Monroe v. Pape*, 365 U.S. 167 (1961). Because Brady has not sued a "person" as required by § 1983, that claim should be DISMISSED.[5]

## IV. Eleventh Amendment Sovereign Immunity

Defendant first argues for dismissal of all claims brought against it on the basis of Eleventh Amendment sovereign immunity.[6] (Doc. 7 at 2-4.) Under the doctrine of sovereign immunity, the Eleventh Amendment bars suits by private citizens against a state or its agencies in federal court unless the state has waived its immunity or Congress has properly abrogated that immunity.[7] *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984). Federal jurisdiction over suits against unconsenting states or state officials "was not contemplated by the Constitution when

---

[5] Again, Defendant failed to make this argument in its motion to dismiss. In recommending dismissal on this basis, this court exercises its inherent authority under 28 U.S.C. § 1915(e)(2) to dismiss *sua sponte* a complaint filed *in forma pauperis* when it is, as here, "based on an indisputably meritless legal theory." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (citation omitted). Further, I also recommend that Brady be given leave to amend, mitigating any concern about the propriety of a *sua sponte* dismissal.

[6] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has also been interpreted to bar federal suits against state governments by a state's own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

[7] Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976), which it has not done in any way relevant to this case. It is well settled that Congress did not intend to abrogate sovereign immunity by the enactment of § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979).

establishing the judicial power of the United States." *Hans*, 134 U.S. at 15. As a result, the Eleventh Amendment bars suit in federal court for damages against states, state agencies, and state officials acting in their official capacity, *unless* the state consents to suit or provides an express or statutory waiver of immunity. *Woods*, 466 F.3d at 236. Any such waiver of Eleventh Amendment immunity by a state must be unequivocally expressed. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238 n.1 (1985).

This case thus presents a two-fold question: Whether Defendant is properly considered a state agency for the purposes of sovereign immunity, and, if so, whether the state has consented to suit.

Defendant, the Chittenden Correctional Facility, is undoubtedly a state agency. Whether or not a state's sovereign immunity extends to a particular state instrumentality generally turns on its relationship to the state. *See Woods*, 466 F.3d at 236 (Eleventh Amendment immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state" (internal quotation omitted)). This court is charged to look to the "nature of the entity created by state law." *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). As relevant here, Vermont state law creates the Department of Corrections ("DOC") as a state agency, 3 V.S.A. § 212(4), and empowers the DOC to administer correctional facilities, 28 V.S.A. § 101(1), such as Defendant. The Vermont DOC, as a state agency, and Defendant Chittenden Correctional Facility, as a prison operated by the DOC, are thus entitled to immunity under the Eleventh Amendment as arms of the state. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (recognizing Eleventh Amendment immunity for state

7

department of corrections and prison facility).[8] Therefore, the state must have consented to suit for Brady's case to go forward.

There is no question that the state has not waived immunity from a § 1983 suit in federal court. Indeed, the state has expressly preserved its immunity under the Eleventh Amendment. *See* 12 V.S.A. § 5601(g).[9] Accordingly, the claims against Defendant should be DISMISSED.

## V. The Merits of the Eighth Amendment Claim

Defendant next argues Brady's claim that he was assaulted by another inmate fails to demonstrate any plausible claim under the Eighth Amendment.[10]

The Eighth Amendment's prohibition on "cruel and unusual punishments," U.S. CONST. amend. VIII, requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). More specifically, "prison officials have a duty … to protect

---

[8] The fact that Brady filed a direct suit against the state, rather than one of its officers, is of considerable significance because Brady seeks both injunctive and monetary relief. The Eleventh Amendment thus bars the entirety of his suit, including his claim for injunctive relief, because "a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *see Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997). The only exception to this principle is if the plaintiff seeks prospective injunctive relief from a specific state officer, *see Edelman v. Jordan*, 415 U.S. 651, 677 (1974), which Brady has not done. Although Brady seeks relief in the form of three to six months of uncompensated work by the facility superintendent, he has not named that superintendent as a defendant in this action. Furthermore, the prospective injunctive relief sought in this case—uncompensated work—is not of the kind contemplated by *Ex parte Young*, 209 U.S. 123 (1908), the seminal case in this area, which addressed suits that seek "prospective injunctive relief *in order to end a continuing violation of federal law*." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996) (emphasis added). Brady has alleged no such continuing violation.

[9] Sovereign immunity similarly bars Brady's ADA claim. *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

[10] In this regard, because Brady's primary claim involves Defendant's failure to protect him from harm, this court will construe his claim as falling under the Eighth Amendment even though he has not cited that amendment.

8

prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). "However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." *Hayes*, 84 F.3d at 620. The test for deliberate indifference requires a two-fold showing: "(1) a deprivation that is objectively, sufficiently serious that [the inmate] was denied the minimal civilized measure of life's necessities[;] and (2) a sufficiently culpable state of mind on the part of the defendant official." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (citation omitted). To meet the subjective culpability prong, a prison official must have knowledge that an inmate faces a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to protect the inmate. *Farmer*, 511 U.S. at 837-38.

Here, the entirety of Brady's allegations regarding the assault can be found in two lines of the Complaint: "I was assaulted by an inmate" and "I was assaulted in the [Correctional Facility] by an inmate." He says nothing about the circumstances of the assault, the role facility personnel may or may not have played in that assault, the pre-existing risk to his safety, and, crucially, the foreknowledge that any officials may have had about any such risk.[11] Without this information, Brady has failed to meet his burden

---

[11] In his response to Defendant's motion to dismiss, Brady—perhaps having picked up on the elements necessary to state a claim after reading the motion to dismiss—alleges that "prison officials had first[-]hand knowledge of the excessive risk factors" present in the facility. (Doc. 8 at 9-10.) As stated, this court need not accept as true such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

to allege facts to support a plausible claim of deliberate indifference under the Eighth Amendment, and his claim should therefore be DISMISSED.[12, 13]

## VI. Leave to Amend

The Second Circuit has emphasized that a district court should not dismiss a *pro se* filing "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). "[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008). Here, Brady's claim does not clear the exceedingly high bar of unsustainability necessary to deny him leave to amend, and he should be allowed an opportunity to amend his

---

[12] Given this resolution, the court need not reach Defendant's argument as to Brady's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act. (Doc. 7 at 4-5.) I note only that there is considerable reason to doubt whether Defendant has met its burden to prove the affirmative defense of non-exhaustion. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Although Brady undoubtedly failed to utilize proper prison grievance procedures, such remedies may have been functionally unavailable to him, *see Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), in light of his allegation in his response to Defendant's motion (Doc. 8 at 6) that prison officials did not inform him and other inmates about these procedures. *See Burgess v. Garvin*, No. 01 Civ. 10994, 2004 WL 527053, at *3 (S.D.N.Y. March 16, 2004); *Arnold v. Goetz*, 245 F. Supp. 2d 527, 537 (S.D.N.Y. 2003); *Larry v. Byno*, No. 99-CV-651, 2003 WL 1797843, at *1 (N.D.N.Y. April 4, 2003); *Hall v. Sheahan*, No. 2000 C. 1649, 2001 WL 111019, at *2 (N.D. Ill. Feb. 2, 2001) ("An institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it.").

[13] Similarly, I need not reach Defendant's argument that Brady's claim is barred by the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. 7 at 5-6.) In *Heck*, the Supreme Court held that a plaintiff cannot use a § 1983 action to challenge, either expressly or implicitly, the validity of a conviction unless such conviction had already been reversed, called into doubt by the issuance of a habeas corpus petition, or otherwise invalidated. 512 U.S. at 486-87. In his response to the motion to dismiss, Brady essentially abandoned the portion of his claim challenging the lawfulness of his arrest, instead arguing that his argument related more to the prison intake protocols. (Doc. 8 at 8.) Even assuming his Complaint raises a challenge to his arrest, it is hardly clear—given the dearth of information in the record related to Brady's arrest or underlying conviction—that *Heck* would bar such a claim. *See Fifield v. Barrancotta*, 353 Fed. Appx. 479, 480-81 (2d Cir. 2009); *Heck*, 512 U.S. at 487 n.7; *Dolphin v. Waterbury Police Dept.*, No. 3:05CV426, 2007 WL 1020741, at *3 (D. Conn. March 30, 2007); *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997).

Complaint. However, Brady is reminded that the law of the Second Circuit which requires more than mere fulmination; and that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

If Brady chooses to submit an amended filing, the filing shall be entitled "Amended Complaint" and must contain all claims against all parties, as it will supersede the original Complaint in all respects. The court should also require that the Amended Complaint be filed within thirty days of its ruling on this Report and Recommendation. Failure to so amend should result in the dismissal of all claims with prejudice.

## **Conclusion**

For the reasons set forth above, I recommend that the Defendant's motion to dismiss (Doc. 7) be GRANTED and the case be DISMISSED. I further recommend that, if this Report and Recommendation is adopted by the Court, Brady be allowed thirty days to file an Amended Complaint. Failure to file an Amended Complaint should result in the dismissal of the case with prejudice.

Dated at Burlington, in the District of Vermont, this 18th day of October, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).